VAN PELT v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. March 7, 1917.)

No. 1462.

1. PROSTITUTION ⬥4—WHITE SLAVE ACT—EVIDENCE—PROCURING TRANSPORTATION.

    Where a girl, who had become pregnant by defendant, requested him to procure a place where she could go and await confinement, and he made arrangements for her to go to a place in another state, and gave her more than enough money for her ticket, and thereafter met her on the train and accompanied her to her destination, purchasing her ticket from Washington to her destination, though she had purchased her own ticket to Washington, the jury could find that defendant procured her transportation, within White Slave Act June 25, 1910, c. 395, 36 Stat. 825.

    [Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4.]

2. PROSTITUTION ⬥1—INTERSTATE TRANSPORTATION—"DEBAUCHERY."

    In the White Slave Act, making it an offense to procure the interstate transportation of a girl for the purpose of prostitution and debauchery, "debauchery" is not limited to the meaning of seduction, which would require proof that defendant procured the transportation in order that he might more surely, more readily, or more safely induce her to yield to his wishes, but includes a purpose to expose her to such influence as will naturally and inevitably so corrupt her character as to lead her to acts of sexual immorality, or, if she is already a sexually corrupt woman, a pur-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pose that she shall engage or continue more or less habitually in sexually immoral practices.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2.

For other definitions, see Words and Phrases, First and Second Series, Debauch.]

3. CRIMINAL LAW ⬅⬆1159(2)—REVIEW—VERDICT OF JURY.

An appellate court cannot, at the instance of a convicted person, substitute its judgment for that of the jury, when there is anything in the evidence upon which a rational mind might arrive at the conclusion the jury did.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3075.]

4. PROSTITUTION ⬅⬆1—TRANSPORTATION—PURPOSE.

A man who procured the interstate transportation of a girl, with whom he had had intercourse whenever he sought it during the past three years, for the purpose of procuring a place where she could remain until after her confinement, cannot be convicted under the White Slave Act, though he accompanied her and anticipated that he would have intercourse with her after she left the state, if such anticipation played no part in inducing him to procure the transportation.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2.]

Woods, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Charlottesville; Henry Clay McDowell, Judge.

Rinker M. Van Pelt was convicted of violating the White Slave Act, and he brings error. Reversed.

S. D. Timberlake, Jr., of Staunton, Va. (Timberlake & Nelson, of Staunton, Va., on the brief), for plaintiff in error.

R. E. Byrd, U. S. Atty., of Richmond, Va. (Joseph H. Chitwood, Asst. U. S. Atty., of Roanoke, Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The appellant was convicted of a violation of the White Slave Act. He says the court below should have granted his motion for an instructed verdict of not guilty. The evidence in the view most unfavorable to him may be briefly summarized: He and the prosecuting witness were residents of Augusta county, Va. Improper sexual relations between them began when she was 14 and he 35. He had been married, but was divorced before he met the prosecutrix. Their intimacy became habitual and continued for some 3 years; he having intercourse with her whenever he sought it, which was on the average about twice a week. The relations between them were not known to the community in which they lived. In October, 1913, she realized that she was pregnant. She asked the defendant to secure a place to which, before her condition became such as would arouse suspicion, she could go to await confinement. He made arrangements with a midwife in Baltimore to receive her. In the latter part of January, 1914, she told him that she would like to go. They agreed that she should leave home on the 30th of the month. By

arrangement he met her on the train. They spent that night at a Washington hotel,. and the next at one in Baltimore. The jury could have found that these stops at the hotels were to afford opportunity for the sexual intercourse which in point of fact took place on each occasion. She bought her own ticket from her home to Washington; he from Washington to Baltimore. He gave and sent her money much in excess of the sum she paid for her ticket. She remained at the midwife's until after their child was born.

It appears that the learned judge below delivered a written opinion, explaining why he denied a motion for a new trial, which was made upon the same grounds now urged in support of the contention that the judgment should be reversed. We regret that, as it was omitted from the record, we have not had the light it might throw on the question at issue.

[1] Defendant's part in bringing her to Baltimore justified the jury in finding that he procured her transportation from Virginia to Maryland. The facts in this respect are clearly distinguishable from those in Welsch v. United States, 220 Fed. 764, 136 C. C. A. 370.

[2] Nevertheless, before defendant could be properly convicted, the evidence must show that he took a hand in procuring the transportation for the particular unlawful purpose· charged in the indictment. The indictment says she was transported for the purpose of prostitution and debauchery. Clearly there was no intent that she should engage in prostitution. "Debauch" in one sense is a synonym for "seduce." In this case the seduction had taken place years before. We are not prepared to say that the mere fact that a woman had once or many times fallen from virtue renders a new debauching or seduction of her by an old or new lover legally impossible; but obviously, to sustain a conviction upon the assumption that to debauch means to seduce, there must be evidence that the defendant procured the transportation in order that he might more surely, more readily, or more safely induce her to yield to his wishes. The evidence does not suggest that defendant's relations with the prosecutrix had been interrupted, or that they would not have continued, had not the trip been taken. The word "debauchery," as used in the statute is not limited, however, to the meaning above mentioned. Athanasaw v. United States, 227 U. S. 326, 33 Sup. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911; Suslak v. United States, 213 Fed. 913, 130 C. C. A. 391.

The statute is violated, if the intent is to expose the woman to such influences as will naturally and inevitably so corrupt her mind and character as to lead her to acts of sexual immorality, or if the purpose of the interstate transportation is that an already sexually corrupt woman shall, at the place to which she is taken or induced to go, engage or continue more or less habitually in sexually immoral practices. There is no evidence that the defendant had any purpose of debauching the prosecuting witness, within any one of the meanings of the word.

It so happens, however, that both in the court below and at this bar counsel on both sides understood that the words "purpose of debauchery" meant the same thing as would the words "immoral purpose, to wit, the purpose of having illegitimate sexual intercourse with

him." Under such circumstances, we should hesitate to disturb the judgment below, if there was any evidence that the defendant's purpose in procuring the transportation of the prosecutrix to Baltimore was in whole or in part that which the parties understood the indictment to charge.

[3] The jury are the triers of the facts. An appellate court has no right, at the instance of a convicted prisoner or of any one else, to substitute its judgment for theirs in any case in which there is anything in the evidence upon which a rational mind might arrive at the conclusion the jury did. Sometimes, although to our apprehension much less frequently than is perhaps generally supposed, jurors do miss altogether the issue they are to try. They are not altogether unlikely to do so, if it appears that there is no question that the defendant has done something, whether charged in the indictment or not, for which he richly deserves condign punishment. Among decent men there could not be two opinions of any man of mature years who under any circumstances whatever has illegitimate sexual intercourse with a girl of 15 or under. But that was not the question to be passed upon.

[4] Before the defendant could properly be convicted, there must be evidence that the purpose, or one of the purposes, of the defendant, if he had more than one, in bringing the prosecutrix to Baltimore, was that he might have sexual intercourse with her. No possible reason is suggested by the record why he should have gone to the trouble and expense of having her make such a trip, and making it with her, merely in order that he might twice more exercise a liberty which he had taken hundreds of times before, and could just as well have taken an indefinite number of times more, if she had remained at home. Had he been himself removing to Baltimore, and had he induced the girl to join him there, so that their relations might continue, a very different issue would have been presented, as it would have been, had one of his purposes been to employ her as his stenographer or his housekeeper, if he also intended that she should be his mistress as well. But, upon the undisputed evidence in this case, there can be no doubt that the girl was brought to Baltimore in order that she might go into seclusion during the later months of her pregnancy and have care during her confinement. The defendant may have anticipated that while on the journey he would gratify his desire, as he doubtless would have done, had the trip never been taken; but there is no evidence from which it can reasonably be held that such anticipation played any part whatever in inducing him to arrange for her coming to Baltimore.

The judgment below must be reversed, and the case remanded for a new trial.

Reversed.

WOODS, Circuit Judge (dissenting). I dissent, on the ground that the evidence warranted the conclusion that the defendant procured the transportation of the prosecuting witness from Virginia to Maryland, not only to provide for her in confinement, but also for the purpose and with the intent of continuing in Washington and Baltimore the debauchery begun in Virginia.