**Herman Edward NELMS, Appellant,**

v.

**UNITED STATES of America,**
Appellee (two cases).

Nos. 8306, 8307.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1961.

Decided June 1, 1961.

Alexander Wellford, Richmond, Va. (Court-assigned counsel), for appellant.

H. Clyde Pearson, Asst. U. S. Atty., Roanoke, Va. (John Strickler, U. S. Atty., and Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and HARRY E. WATKINS, District Judge.

SOBELOFF, Chief Judge.

The permissible unit of offense in prosecutions under the Mann Act, 18 U.S.C.A. § 2421, is the point at issue in this appeal.

Two violations of the Act were alleged against Herman Edward Nelms in an indictment handed up on May 4, 1959, in the United States District Court for the Western District of Virginia. The first count of the indictment charged a transportation in interstate commerce of Lasula Roberts Nelms, the defendant's wife, for the purpose of prostitution, on or about September 17, 1958, from Bluefield, West Virginia, to Roanoke, Virginia. The second count charged him with transporting the same woman for a similar purpose on or about October 11, 1958, from Roanoke, Virginia, to Bluefield, West Virginia. Convicted by the jury on both counts, Nelms was sentenced

on May 12, 1959, to five years imprisonment on each, the sentences to run consecutively.

In July, 1960, Nelms filed a petition under Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which is available to correct an illegal sentence. The principal point raised was that, under the facts as developed at the trial, he had committed a single offense only. The real offense, he contended, was that of transporting a woman on one round trip from Bluefield, West Virginia, to Roanoke, Virginia, and back to Bluefield. Therefore, according to his contention, one of the five year sentences should be vacated. After considering this argument, the District Judge concluded in an extensive opinion that two offenses had been committed and denied the motion. From this action Nelms prosecutes his appeal.

The evidence presented at trial revealed the following: Nelms married Lasula Roberts on September 4, 1958, in Bluefield, West Virginia. Before the marriage, they had been staying at a hotel in Bluefield where Lasula engaged in prostitution at the instance of the appellant.[1] After they were married, Lasula Nelms continued the same course of conduct at the same hotel, the husband soliciting men for her. On September 17, the defendant and his wife left Bluefield and journeyed by bus to Roanoke, Virginia. In that city they stayed at various hotels, where the wife continued to engage in prostitution. From the resulting earnings the appellant purchased an automobile in Roanoke, and, after a period of time spent in that city, they made several trips in this vehicle. One journey was to Pennington Gap, Virginia, where they visited both the defendant's mother and his wife's mother. They also traveled to Indianapolis, Indiana, and to Newport News, Virginia, afterwards returning to Roanoke. Then, on October 11, 1958, Mr. and Mrs. Nelms left Roanoke and returned to Bluefield, West Virginia, where the wife continued her depravity for the appellant's benefit.

The appellant's attorney, appointed by this court, has vigorously and ably argued that the evidence disclosed a continuous course of conduct toward the same woman and that this amounts to but a single violation of the Mann Act. Reliance is placed upon the doctrine, developed in several recent cases, that a round trip, from one state to another and then back to the place of origin, where the initial purpose is innocent, cannot be fragmented in order to find a violation of the Mann Act.[2] It is also argued that the "rule of lenity" should be applied, whereby courts do not, if the legislative will is unclear, ascribe a purpose to Congress of pyramiding offenses for "a single transaction." [3] If we could

1. Lasula, who was 16 at the time, testified that as soon as they came to Bluefield, at about the end of August, 1958, the defendant, a 40 year old man, insisted that she engage in prostitution. She was at first unwilling, but according to her testimony Nelms threatened to abandon her there, and he also beat her with his fists in order to persuade her to prostitute herself. Under this duress, she finally yielded.

2. See: Mortensen v. United States, 1944, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331; Oriolo v. United States, 1945, 324 U.S. 824, 65 S.Ct. 683, 89 L.Ed. 1393; Becker v. United States, 1955, 348 U.S. 957, 75 S.Ct. 449, 99 L.Ed. 747; Smart v. United States, 5 Cir., 1953, 202 F.2d 874; United States v. Ross, 2 Cir., 1958, 257 F.2d 292.

3. In Bell v. United States, 1955, 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905, it was said:

"* * * When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. * * * It mere-

look upon this case as merely a continuous round trip, or a single transaction, we would find appellant's arguments quite persuasive. However, the facts show two separate and distinct journeys which, under the relevant decisions, constitute two separate offenses.

■ In Mortensen v. United States, 1944, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331, the defendants journeyed with two girls, who worked for them as prostitutes in Nebraska, from that state to Utah for a two week vacation. The purpose of the trip was entirely innocent and no illicit activity took place in Utah during the vaction. However, upon returning to Nebraska, the girls resumed their activities as prostitutes. The Government attempted to establish a violation of the Mann Act based upon the return trip, inasmuch as the girls did come back to pursue their immoral careers. The Supreme Court, however, held that because the purpose of the trip was completely legitimate, there was no violation of the statute. The Court stated, 322 U.S. at page 375, 64 S.Ct. at page 1041:

> "The fact that the two girls actually resumed their immoral practices after their return to Grand Island does not, standing alone, operate to inject a retroactive illegal purpose into the return trip to Grand Island. Nor does it justify an arbitrary splitting of the round trip into two parts so as to permit an inference that the purpose of the drive to Salt Lake City was innocent while the purpose of the homeward journey to Grand Island was criminal. The return journey under the circumstances of this case cannot be considered apart from its integral relation with the innocent round trip as a whole."

ly means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a *single transaction* into multiple offenses * *." (Emphasis supplied)

4. See cases cited in footnote 2, supra. Also, in other contexts, courts have re-

The same reasoning has been applied to similar factual situations in other cases.[4] In this court it has long been the rule that where an interstate journey is motivated by an innocent purpose, no violation of the Mann Act can be predicated upon incidental immoral activities during the trip or upon the resumption of such activities after returning. Van Pelt v. United States, 4 Cir., 1917, 240 F. 346; Fisher v. United States, 4 Cir., 1920, 266 F. 667; Hunter v. United States, 4 Cir., 1930, 45 F.2d 55, 73 A.L.R. 870.

However, we fail to perceive how invocation of the above principle can avail the present defendant. Since an innocent trip across state lines and back cannot be split into two parts to sustain a single offense, then, his argument runs, a criminal journey across state lines and back cannot be split in order to sustain two offenses. The defendant maintains that a round trip transportation for prostitution is thus only one offense. Assuming that a round trip transportation is only one offense, we have here no simple round trip. Nelms met Lasula Roberts in Pennington Gap, Virginia, where both resided. Before they were married, they journeyed together to Big Stone Gap, Virginia, and then to Bluefield, West Virginia. They stayed at two different hotels in Bluefield between August 28, 1958, and September 17, 1958, and it was there that Lasula Roberts turned to prostitution at Nelms' insistence and there they were married. When they left Bluefield on September 28, 1958, there is nothing in the record indicating any intent to return. In response to the question why they decided to leave and go to Roanoke, the wife testified: "He made a statement that there would be more money made in Roanoke than in Bluefield." Bluefield was not their home. It was, apparently, merely a place to sojourn briefly. For

fused to divide arbitrarily into separate and distinct parts what is really one journey. See: Mellor v. United States, 8 Cir., 1947, 160 F.2d 757, certiorari denied 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858; United States v. Jamerson, D.C. N.D.Iowa 1944, 60 F.Supp. 281.

all that appears in the record, this panderer and his prostitute traveled to Roanoke for "economic" reasons, without any intent to return to Bluefield. It does not appear how long a stay was contemplated in Roanoke. A single transportation of the woman was made from Bluefield to Roanoke for the purpose of making more money by prostitution.

Moreover, events after the trip to Roanoke negative the idea that this was a "continuous journey" or "round trip." After staying awhile in Roanoke, the defendant and his wife journeyed to Pennington Gap, Virginia, to Indianapolis, Indiana, and to Newport News, Virginia. After these travels, they returned to Roanoke where Mrs. Nelms engaged in prostitution. Then the expedition from Roanoke to Bluefield on October 11, 1958, charged in the second count, was undertaken so that she could again practice prostitution at hotels in Bluefield. The evidence strongly indicates that this was just an independent migration in search of greener pastures, not the trekking of travelers homeward bound.

 The decisions have emphasized that the gist of an offense under the Mann Act is the interstate *transportation*. Hoke v. United States, 1913, 227 U.S. 308, 320, 33 S.Ct. 281, 57 L.Ed. 523; Gebardi v. United States, 1932, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206; United States v. Beach, 1945, 324 U.S. 193, 65 S.Ct. 602, 89 L.Ed. 865; McTyre v. United States, 5 Cir., 1954, 213 F.2d 65. Furthermore, the number of separate transportations determines the number of of-fenses. Caballero v. Hudspeth, 10 Cir., 1940, 114 F.2d 545; [5] Robinson v. United States, 10 Cir., 1944, 143 F.2d 276. The evidence at the trial affords sufficient support for the view that Nelms undertook two separate and distinct transportations of a woman in interstate commerce. The journeys were at entirely different times. Each had its own unlawful purpose: prostitution in Roanoke and prostitution several weeks later in Bluefield.[6]

 Likewise logically inadmissible, and for the same reasons, is the appellant's argument that the "rule of lenity" requires that his conduct be treated as amounting to a single offense. See Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. That rule, under which courts do not, where the Congressional will is unclear, construe a statute as providing for separate offenses for the *same transaction*, has no application where the facts indicate separate transactions.[7] Two distinct interstate journeys, each with its immoral purpose, and separated by time and events, do not constitute a single transaction.

 While a single transaction may not be split up into more than one count in order to proliferate penalties, neither will prosecution for one offense confer immunity from prosecution for distinct though related offenses. A round trip may well be a single transportation in the view of 18 U.S.C.A. § 2421, but the fact that travel from one place to another is paralleled by travel in the opposite direction between the same points does

5. See also Caballero v. Hudspeth, D.C.D. Kan.1941, 36 F.Supp. 905.

6. For other cases holding that separate offenses were committed on facts more or less analogous to those in the present case, see: Myers v. Morgan, 8 Cir., 1915, 224 F. 413 (the defendant transported the same woman on two trips, separated by a six month interval of time, from York, Pennsylvania, to Washington, D. C.); Reed v. United States, 5 Cir., 1944, 142 F.2d 435 (the defendant took the same woman on three occasions to a soldiers' training camp); Williams v. United States, 5 Cir., 1949, 171 F.2d 952 (a Dyer Act, 18 U.S.C.A. § 2311 et seq., case where the same car was transported by the defendant twice within three days across state lines); Langford v. United States, 9 Cir., 1949, 178 F.2d 48, certiorari denied 339 U.S. 938, 70 S.Ct. 669, 94 L.Ed. 1355 (woman transported from California to Mexico and back, and the court held it was proper for the Government under the circumstances to separate the trips into two counts). See also: Sink v. Cox, 8 Cir., 1944, 142 F.2d 917; but cf. United States v. Hunt, 7 Cir., 1941, 120 F.2d 592.

7. See footnote 3, supra.

not inexorably compel the conclusion that the two movements are merely parts of a single excursion. Review of the facts may warrant a finding that they were separate journeys. We think that the particular circumstances shown in this record support the inference that the journey on September 17, 1958, was a distinct enterprise from that undertaken on October 11, 1958, and therefore the defendant is subject to a finding of guilt and to punishment for each.

The appellant's final point is that the five year consecutive sentences imposed upon him involve an ambiguity because the sequence of the consecutive terms was not spelled out clearly, and, therefore, they should be treated as running concurrently. The same argument, however, has been rejected as completely lacking in merit by the Supreme Court as well as this court. United States v. Daugherty, 1926, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309; Mixon v. Paul, 4 Cir., 1949, 175 F.2d 441.

For the above reasons, the District Court's dismissal of Nelms' motion is

Affirmed.